**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G & G Closed Circuit Events, LLC, | No. CV-22-01803-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Eleazar Ayala, et al., | |
| Defendants. | |

Plaintiff G & G Closed Circuit Events, LLC ("Plaintiff") has filed a Motion for Default Judgment (Doc. 15) against Defendants Eleazar Ayala, Paloma Ayala, and Jesus Ruiz, all individually and d/b/a Cayomango; and Cayomango LLC, an unknown business entity d/b/a Cayomango (collectively the "Defendants"). The Motion is unopposed, and the time to file a response has passed. *See* LRCiv 7.2(c). The Court will grant Plaintiff's Motion for the reasons below.

**I.    Background**

This case arises from Defendants showing the "*Saul Alvarez v. Caleb Plant* boxing event" (the "Event") in Defendants' commercial establishment without paying for the Event. (Doc. 15-1 at 2). Plaintiff owned the rights to the Event. (*Id.*)

Plaintiff is a California limited liability corporation, with its principal place of business in Las Vegas, Nevada. (Doc. 1 at ¶ 6). Plaintiff is "a commercial distributor and licensor of sporting events." (*Id.* at ¶ 32). Defendants Eleazar Ayala, Paloma Ayala, and Jesus Ruiz are identified as "Member(s) and Manager(s) of Cayomango LLC."

(*Id.* at ¶¶ 8–10).  Defendant Cayomango LLC is an Arizona limited liability corporation identified as owning and operating "the commercial establishment doing business as Cayomango" in Phoenix, Arizona.  (*Id.*)

On October 20, 2022, Plaintiff filed its Complaint, alleging the Defendants violated two federal acts: (1) the Communications Act of 1934, 47 U.S.C. § 605 *et seq.*; and (2) the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 *et seq*.  (*Id.* at ¶¶ 1, 28–46).  Plaintiff seeks statutory damages under these federal acts.  (Doc. 15-1 at 10).  Plaintiff served Defendants between November 17, 2022, and November 22, 2022.  (*See* Docs. 7; 8; 10; 11; 12 at 2); *see also* Fed. R. Civ. P. 4(m) (service must take place within 90 days of complaint's filing).  None of the Defendants responded or appeared by the prescribed deadline.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

On December 28, 2022, Plaintiff requested this Court enter default judgment against Defendants.  (Doc. 12).  The Clerk entered default against Defendants the next day.  (Doc. 13).  On February 15, 2023, Plaintiff filed an Application for Default Judgment against Defendants.  (Doc. 15).  Defendants did not file a response.

**II.    Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment.  The Court possesses discretion whether to enter a default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Before analyzing the merits of Plaintiff's Application for Default Judgment, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citing *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

If jurisdiction is established, the Court should then consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

## III. Discussion

The Court will first assess whether it has subject matter jurisdiction over the case and personal jurisdiction over Defendants.  The Court will then evaluate the merits of Plaintiff's Motion for Default Judgment under the *Eitel* factors.

### A. Jurisdiction

As to subject matter jurisdiction, Plaintiff's Complaint asserts two claims under federal laws—the Communications Act of 1934 and the Cable and Television Consumer Protection and Competition Act of 1992.  (Doc. 1 at ¶ 1); *see* 47 U.S.C. §§ 553, 605.  The Court therefore has federal question jurisdiction under 28 U.S.C. § 1331.

The Court also finds it has personal jurisdiction over the establishment and the individual Defendants.  Defendant Cayomango LLC's ("Cayomango") domicile state is Arizona, as indicated by Arizona Corporation Commission records.  (Doc. 1 at ¶¶ 8–10).  The Complaint also alleges the individual Defendants are operating the commercial establishment where the alleged violations of federal law occurred at 2851 W. Valencia Road, Phoenix, Arizona 85746.  (*Id.*); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").  Thus, because each of the individual Defendants are domiciled in Arizona, and the corporation they operate is in Arizona, the Defendants are "at home" and the Court finds it has personal jurisdiction over the matter and parties.[1]

/ / /

---

[1] Plaintiff did not allege where the individual Defendants were domiciled.  (Doc. 1). Nonetheless, the three proof of service documents indicate the individual Defendants were served at their usual place of abode, all of which were located within Arizona.  The Court thus finds the individual Defendants to be domiciled in Arizona.  (Docs. 7; 8; 10).

- 3 -

**B.** *Eitel* **Factors**

Having found jurisdiction, the Court will assess the *Eitel* factors to determine the merits of Plaintiff's Motion for Default Judgment. As an initial matter, although the Complaint contains two counts, in Plaintiff's Motion for Default Judgment, it seeks damages as to only Count I. (Doc. 15-1 at 16).[2]

The Court finds the majority of the factors weigh in favor of entering default.

### 1. Possible Prejudice to Plaintiff

The first *Eitel* factor weighs in favor of entering default judgment against Defendants. Plaintiff served all Defendants and received no response. (*See* Docs. 7; 8; 10; 11). Because "Plaintiff has no alternative means by which to resolve its claims," potential prejudice is high. *Castro v. C&C Verde LLC*, 2019 WL 13244384, at *2 (D. Ariz. July 9, 2019). Therefore, the first factor favors default judgment.

### 2. Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third *Eitel* factors are often considered together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). They "require that plaintiff['s] allegations 'state a claim on which the [plaintiff] may recover.'" *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Plaintiff seeks relief under 47 U.S.C. § 605. (Doc. 1 at ¶ 1).

#### a. Count I: Violation of 47 U.S.C. Section 605(a)

Section 605(a) applies to satellite television signals. *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008). To be held liable for a violation of Section 605, Plaintiff must plead Defendants were (1) not authorized by the sender, (2) intercepted a radio communication, and (3) divulged or published the protected communication to any person. 47 U.S.C. § 605(a); *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981). The statute further provides that for any violation that "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the

---

[2] Plaintiff notes in its Motion that it requests liability only under Count I. (*Id.* at 4). Because the Court enters judgment under Count I, it will dismiss Count II.

court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff alleges it possessed exclusive rights to the Event. (Doc. 1 at ¶ 29). Plaintif alleges the Event was nationally televised on November 6, 2021, and required certain "sublicensing agreements" to be publicly displayed by a commercial establishment. (*Id.* at ¶ 29–31). Plaintiff alleges the Event "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal to Plaintiff's lawful sub-licensees." (*Id.* at ¶ 33).

Plaintiff further alleges Defendants (1) did not have Plaintiff's permission, (2) willfully intercepted the licensed Event on November 6, 2021, and (3) divulged or published the Event to patrons of Cayomango at 4333 West Indian School Road, Phoenix, AZ 85031. (*Id.* at ¶¶ 34–35). Plaintiff alleges the interception and publication of the Event was "for purposes of direct and/or indirect commercial advantage and/or financial gain." (*Id.* at ¶¶ 21, 36). Plaintiff also alleges Defendants advertised the Event on Cayomango's public Facebook and Instagram pages. (*Id.* at ¶¶ 26–27; *see also* Doc. 15-4 at 18, 20 (screenshot exhibits supporting the allegations)). Plaintiff supports its allegations with a sworn piracy affidavit of Investigator Sarah Jennings ("Investigator Jennings"), who was present at Cayomango on November 6, 2021, and witnessed the Event being displayed to patrons on several televisions. (Doc. 15-2 at 1–3).

Considering the above allegations as true, Plaintiff has properly pled Defendants violated Section 605(a). The second and third *Eitel* factors weigh in favor of default judgment.

### 3. Money at Stake

The fourth *Eitel* factor concerns "the sum of money at stake in the action." *Eitel*, 782 F.2d at 1471. "[T]he court must consider the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel v.*

*Systemhouse, Inc.*, 2008 WL 65604, at *4 (D. Ariz. Jan. 3, 2008). However, if "the amount sought is directly proportional to the harm a plaintiff incurred, this factor does not preclude entry of default judgment." *Mountains of Spices LLC v. Lafrenz*, 2023 WL 1069696, at *8 (D. Ariz. Jan. 27, 2023) (citing *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016)).

In its Complaint, Plaintiff seeks $110,000.00 plus attorneys' fees and costs for Count I. (Doc. 1 at 12). At first glance, this amount seems disproportionate to the harm suffered. This is because the Complaint states, "[t]he Commercial fee for an establishment the size of [Defendant Cayomango] to broadcast the Program lawfully was $1,250.00." (Doc. 1 at ¶ 25). However, Plaintiff's Application for Default Judgment requests a total of $30,000 in statutory damages. (Doc. 15 at ¶ 5; *see also* Doc. 15-5 (proposed order)).

Considering the Plaintiff's allegations as true, the Court finds the fourth *Eitel* factor weighs in favor of default judgment. The $30,000 damage total falls under Section 605's statutory guidance, and Defendant's violation of federal law was serious.

### 4. Potential Disputes of Material Fact & Excusable Neglect

The fifth and sixth *Eitel* factors also support entry of default judgment. The record demonstrates that Defendants were properly served, yet did not appear or respond. (*See* Docs. 7; 8; 10; 11). This lack of defense on the matter means no potential disputes of material fact are present. Likewise, nothing in the record indicates Defendants' lack of response was due to excusable neglect. The Court finds these two factors weigh in favor of entering default judgment.

### 5. Policy Favoring Decision on the Merits

The seventh, and final, *Eitel* factor stems from "the general rule that default judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). "[T]he mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not dipositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping*, 1996 WL 75314, at *3). The Court is unable

to reach the merits of this case because Defendants have failed to plead or otherwise defend this action. Therefore, this final factor weighs against granting default judgment.

In sum, a majority of the *Eitel* factors weigh in favor of entering default judgment as to Plaintiff's Section 605 claim.

**IV.    Damages**

Plaintiff seeks statutory damages in the amount of $10,000 for the violation of Section 605(e)(3)(C)(i)(II) and enhanced damages in the amount of $20,000 under Section 605(e)(3)(C)(ii) because the violation was willful. (Doc. 15-1 at 10).

**A. Statutory Damages**

Statutory damages are proper when actual damages cannot be easily proven. *J & J Sports Prods., Inc. v. Rubio*, 2013 WL 950031, at *1 (D. Ariz. Mar. 11, 2013). Under 47 U.S.C. § 605, an aggrieved party "may recover an award of statutory damages . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." *See* Section 605(e)(3)(C)(i)(II). An appropriate award of statutory damages "deters but does not destroy" the business. *Kingvision Pay—Per—View v. Lake Alice Bar*, 168 F.3d 347, 360 (9th Cir. 2009).

Here, Defendants' establishment had a maximum capacity of 90 patrons and Investigator Jennings noted the establish was at capacity while she was present. (Doc. 15-2 at 2). Plaintiff attaches evidence to the Motion indicating the cost to lawfully show the Event would have been $1,250. (Doc. 15-3 at ¶ 8; 23). Plaintiff also argues that in assessing damages deterrence should be a factor. (Doc. 15-1 at 11). Based on the size of the establishment, the broadcasting costs, and to sufficiently deter future violations, the Court finds the maximum penalty is appropriate and will award $10,000 under Section605(e)(3)(C)(i)(II). *See G&G Closed Cir. Events LLC v. Venegas Alcantara*, 2020 WL 1047058, at *3 (D. Ariz. Mar. 4, 2020) (awarding $10,000 in statutory damages under same section when defendant displayed the program to approximately 45 patrons).

**B. Enhanced Damages**

If the violation was committed willfully and for commercial gain, Section

605(e)(3)(C)(ii) provides this Court discretion to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." Some courts have found the mere unauthorized showing of a program sufficient to award enhanced damages because of the unlikelihood it was accidental and not done for profit. *See Entertainment By J & J, Inc. v. Al–Waha Enter., Inc.*, 219 F.Supp.2d 769, 776 (S.D. Tex. 2002).

Here, Plaintiff provided evidence that Defendants advertised beforehand on Facebook and Instagram that the Event would be shown at their establishment. (Doc. 15-2 at 4–5). This demonstrates "[t]he showing was not an accident." *See Venegas Alcantara*, 2020 WL 1047058, at *3. Investigator Jennings also stated the program was displayed on several televisions at the establishment, and noted the establishment was at its seating capacity. (Doc. 15-2 at 2). Similar violations have resulted in similar damages awarded to plaintiffs. *See Venegas Alcantara*, 2020 WL 1047058, at *3 (awarding $20,000 in enhanced damages under § 605(e)(3)(C)(ii) because the showing was not an accident as evidenced by the establishment's advertisement of it on Facebook beforehand).

### C. Joint and Several Liability

Last, the Court finds that joint and several liability is appropriate under a theory of vicarious liability. To establish vicarious liability under Section 605(a), the plaintiff must show that (1) an individual had the right and ability to supervise the wrongful conduct and (2) had an obvious and direct financial interest in the activities undertaken. *G & G Closed Circuit Events, LLC v. Miranda*, 2014 WL 956235, at *4 (D. Ariz. Mar. 12, 2014). Plaintiff alleges that each of the individual Defendants was identified on the Arizona Corporation Commission records for Cayomango as a Member and Manager. (Doc. 1 at ¶¶ 8–10). Plaintiff further alleges the individual Defendants had "the right and ability to supervise the activities of Cayomango, which included the unlawful interception, receipt, and publication of Plaintiff's program." (*Id.* at ¶¶ 11–13). Plaintiff alleges the individual Defendants had an "obvious and direct financial interest in the activities of Cayomango." (*Id.* at ¶¶ 18–20). Plaintiff alleges the individual Defendants received "increased profits"

from "the unlawful broadcast of Plaintiff's Program."  (*Id.* at 21).  These allegations, coupled with Investigator Jennings' affidavit that the Event was advertised on Cayomango's Facebook and Instagram page, establish a financial benefit from the violation.

In sum, the Court finds Plaintiff is entitled to entry of default judgment against Defendants.  The Court will award $10,000 in statutory damages, and $20,000 in enhanced damages, for a total of $30,000.  The Court will also allow Plaintiff's Counsel to file a motion for attorneys' fees.  *See* Fed. R. Civ. P. 54(d)(2).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff G & G Closed Circuit Events, LLC's Application for Entry of Default Judgment (Doc. 15) is **granted**.  The Clerk of the Court is kindly directed to enter default judgment in favor of Plaintiff and against Defendants Eleazar Ayala, Paloma Ayala, and Jesus Ruiz, all individually and d/b/a Cayomango, and Cayomango LLC, jointly and severally, in the amount of $30,000.

**IT IS FINALLY ORDERED** that Plaintiff may file a motion for costs and attorneys' fees in accordance with LRCiv 54.2 within **fourteen (14) days** of the entry of this Order.

Dated this 28th day of June, 2023.

Honorable Diane J. Humetewa
United States District Judge